# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MNEMANIA, INC., | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL EDWARD FORREST, d/b/a | : | |
| FORREST WALKER FUNERAL HOME, | : | |
| FORREST FUNERAL SERVICES, and | : | |
| ROBERT WALKER FUNERAL HOME, | : | |
| *Defendant*. | : | No. 20-5209 |

## MEMORANDUM

**Kenney, J.**                                                                                                                                               **June 3, 2021**

Plaintiff Mnemania Inc. ("Mnemania") asserts three causes of action related to infringement of its trademark. This matter comes before us on Mnemania's unopposed Motion for Default Judgment (ECF No. 12) against Michael Edward Forrest d/b/a Forrest Walker Funeral Home, Forrest Funeral Services, and Robert Walker Funeral Home ("Forrest"). Mnemania properly served Forrest with the summons and complaint, but no answer or motion was filed in response. The Clerk of Court entered default on March 12, 2021, *see* ECF No. 10, and we held a hearing on May 26, 2021 on Mnemania's sought-after relief. *See* ECF No. 17.

Mnemania brings this action for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C § 1114, 1125(a), and for breach of contract under Pennsylvania law. *See* Compl., ECF No. 1. For the reasons set forth below, we will enter default judgment and award $1 in nominal damages. We will grant Mnemania's request for an injunction against further infringement of its trademark and its request for fees and costs.

## I.    BACKGROUND

Mnemania is a Delaware corporation that coordinates direct cremation and related after-death services across the nation under its CREMSTAR trademark. Compl. ¶¶ 7–8; ECF No. 1-5 Ex. B. Since 2017, Mnemania has licensed its CREMSTAR mark to funeral homes in Pennsylvania

in connection with cremation and after-death services. *See id.* ¶¶ 8–9. Defendant Forrest is a state-licensed funeral director in Philadelphia, PA. Compl. ¶ 16. On March 23, 2018 Mnemania and Forrest entered into an agreement to work together exclusively for a limited test period to provide online direct cremation services to Bucks, Chester, Delaware, Montgomery, and Philadelphia counties. *See* ECF No. 1-6, Ex. C.

A May 2018 addendum to the agreement granted Forrest a license to use the CREMSTAR mark and operate as "Cremstar of Greater Philadelphia." by a fictitious name change application with the Commonwealth of Pennsylvania. ECF No. 1-7, Ex. D. By signing the addendum, Forrest warranted that he would stop using the mark within seven days of any request Mnemania made. *Id.* The parties entered into another agreement in December 2018 with a thirty-day term. Compl. ¶ 25. When the agreement's term expired on January 13, 2019, Mnemania informed Forrest by email that it no longer intended to continue the direct cremation and related services partnership. *Id.* ¶ 27; ECF No. 1-9, Ex. F. Mnemania requested Forrest stop his use of the CREMSTAR mark and name and withdraw the application with the Pennsylvania Funeral Board permitting the business to operate as "Cremstar" or "Cremstar of Greater Philadelphia. *Id.* It also requested Forrest inform the Pennsylvania Secretary of State that his business could no longer operate as "Cremstar of Greater Philadelphia." *Id.*

When Mnemania saw that Forrest continued to use the CREMSTAR mark and to operate as Cremstar of Greater Philadelphia, its attorneys sent a cease and desist letter in November 2019 and May 2020 repeating its request that Forrest cease its use of the mark. Compl. ¶¶ 29–31. Forrest responded to the second letter by email on May 20, 2020, "[a] buy out is the only option." *Id.* ¶ 32; ECF No. 1-12, Ex. I. On October 20, 2020, Mnemania filed its complaint and personally served Forrest with the complaint and summons on December 14, 2020. *See* ECF No. 4. Forrest did not

answer or otherwise respond to the complaint. At Mnemania's request, the Clerk of Court entered default against Forrest on March 12, 2021. *See* ECF No. 9. Mnemania filed the instant motion for default judgment on April 20, 2021. *See* ECF No. 12. As recently as April 16, 2021, despite personal service of our Notice setting a hearing for May 25, 2021, Forrest continued to use the CREMSTAR mark and to operate as "Cremstar of Greater Philadelphia." *See* ECF No. 11; ECF No. 12-5, Ex. K.

## II.   DISCUSSION

### A. Default Judgment

Federal Rule of Civil Procedure 55(b)(2) permits us to enter a default judgment against a party when the Clerk of Court has entered default. As a threshold issue, we must determine whether the "unchallenged facts constitute a legitimate cause of action." *Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) (citation omitted). Then, our Court of Appeals directs us to consider the following factors: (1) whether the defendant appears to have a litigable defense; (2) prejudice to the plaintiff if default judgment is denied; and (3) whether the defendant's delay is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). We accept as true any factual allegations, other than those as to damages, alleged in the complaint. *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005).

#### 1. *Forrest has no litigable defenses*

We are impeded by Forrest's failure to submit any response of any kind, but on the papers Mnemania submitted, Forrest does not appear to have a litigable defense. Mnemania has stated claims for trademark infringement and unfair competition under federal law and for breach of contract under Pennsylvania law. Our independent review of the record has not revealed any reason to believe Forrest has a meritorious defense to Mnemania's claims.

a. Trademark Infringement and Unfair Competition under the Lanham Act (Counts I and II)

To state its claim for trademark infringement, 15 U.S.C. § 1114(1), and unfair competition, 15 U.S.C. § 1125(a)(1), Mnemania must show three elements: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir.2000) ("We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards"). Mnemania bears the burden of proving these elements. *Id*.

Mnemania has provided evidence of the first two elements. Mnemania provided records from the U.S. Patent and Trademark Office's online database indicating it is the current owner of the registered CREMSTAR mark. Compl. ¶ 10; ECF No. 1-5, Ex. B. Federal registration of a trademark is prima facie evidence "of the mark's validity, the registrant's ownership of the mark, and its exclusive right to use the mark in commerce." *Three Rivers Confections, LLC v. Warman*, 660 F. App'x 103, 106 (3d Cir. 2016) (quoting *Lucent Info. Mgmt., Inc., v. Lucent Tech., Inc.*, 186 F.3d 311, 315 (3d Cir. 1999)). Mnemania also alleges it, and its licensed funeral homes, have continuously used the CREMSTAR mark in connections with cremation services, related after death services, and in its advertising. Comp. ¶¶ 8–15. We are satisfied the first two elements are met here.

The third element, "a likelihood of confusion," exists where "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *E.A. Sween Co.*, 19 F. Supp. 3d at 568 (quotation omitted).[1] "The single most important factor in determining likelihood of confusion is

---

[1] In our Circuit, courts consider a variety of factors in assessing whether two marks are likely to cause consumer confusion. *See Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir.1983)) (setting forth factors to use as tools

mark similarity." *A & H Sportswear*, Inc., 237 F.3d at 216. Here, confusion is likely because Forrest uses a mark almost identical to Mnemania's valid and legally protectable mark, altered only by the addition of the words "of Greater Philadelphia." Compl. ¶¶ 37–42; ECF No. 12-5, Exs. K (Forrest's website) and L (active fictitious entity registration with the Commonwealth of Pennsylvania). Forrest operates in "overlapping classes of customers in overlapping markets" with Mnemania. *See* Compl. ¶ 40. It is therefore reasonable to believe that consumers would be confused by Forrest's use of the mark and believe that Forrest and Mnemania are affiliated entities. *See E.A. Sween Co.*, 19 F. Supp. 3d at 572. As we find that there is a likelihood that customers would be confused by Forrest's use of the CREMSTAR mark, we find Mnemania's claims of trademark infringement and unfair competition under the Lanham Act are legally sufficient.

b. Breach of Contract (Count III)

Under Pennsylvania law, three elements are necessary to plead a breach of contract cause of action: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and (3) resultant damages. *See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). Here, Mnemania alleges it entered into a contract with Forrest to provide cremation services. Compl. ¶ 59; ECF No. 1-6, Ex. C. Mnemania alleges a contract addendum required Forrest to cease using Mnemania's mark within seven days of any request Mnemania made. *Id.* ¶ 60. By continuing its use of the mark after Mnemania's requests, Mnemania alleges Forrest breached the contract. Finally, Mnemania alleges it has

---

in guiding a qualitative decision: (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other factors suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.).

suffered and will continue to suffer damages from Forrest's continued use of its mark. *Id.* ¶ 64. These allegations sufficiently state a Pennsylvania breach of contract claim.

### 2. *Mnemania would be prejudiced by a denial of default judgment*

Mnemania would suffer prejudice if we denied it default judgment. Forrest was properly served over six months ago, and yet has failed to appear or defend itself in any manner. Forrest continues to use Mnemania's mark without any explanation or justification except its demand for a buy-out. *See* ECF No. 1-12, Ex. I ("A buy out is the only option."). Meanwhile, Mnemania has incurred costs and attorneys' fees associated with protecting its rights. Forrest's failure to appear has impeded Mnemania's ability move forward with this action, including to obtain any discovery. We cannot allow Forrest to preclude Mnemania's requested relief by simply failing to appear.

### 3. *Forrest's conduct is culpable*

"Culpable conduct" is conduct "taken willfully or in bad faith." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1182 (3d Cir. 1984). Forrest's response to Mnemania's attorneys' second cease and desist letter that "[a] buy out is the only option" is Mnemania's only record evidence of bad faith. *See* ECF No. 1-12, Ex. I. Even so, Forrest's failure to respond to the complaint and failure to attend our May 25, 2021 hearing were both "willful" in that Forrest accepted service of the complaint and our order setting a hearing. Forrest was therefore aware of the action against him and our hearing. We thus conclude that Forrest is culpable of continuing to use the CREMSTAR mark and unable to offer a plausible defense. *See E.A. Sween Co.*, 19 F. Supp. 3d at 576.

Accordingly, we find that an entry of default judgment on Counts I, II, and III is appropriate.

## III. <u>REMEDIES</u>

### A. Damages

Though it is entitled to recover Forrest's profits and damages it has sustained under the Lanham Act, 15 U.S.C. § 1117(a), Mnemania seeks only $1 in nominal damages. Mnemania notes it cannot calculate the damage caused by Forrest's infringement without discovery. *See* ECF No. 12-1 at 7. As its damages and Forrest's profits certainly exceed $1, we will award $1 in nominal damages for Forrest's Lanham Act violations.

### B. Injunctive relief

Mnemania requests that we enter a permanent injunction against Forrest requiring it to "immediately cease all uses of the mark and name CREMSTAR and CREMSTAR OF GREATER PHILADELPHIA and to immediately cancel the fictitious entity registration with the Commonwealth of Pennsylvania." ECF No. 12-1 at 7. Mnemania also seeks our permission to present the order we enter to necessary entities to ensure Forrest discontinues its infringing behavior. *Id.*

Under the Lanham Act, 15 U.S.C. 1116(a), we may enter injunctive relief to prevent further trademark infringement where we have determined that the plaintiff succeeded on the merits. *7-Eleven, Inc. v. Upadhyaya*, 926 F. Supp. 2d 614, 629 (E.D. Pa. 2013) (citing *Ciba–Geigy Corp. v. Bolar Pharmaceutical Co., Inc.*, 747 F.2d 844, 850 (3d Cir.1984)). As we already determined Mnemania's claims of trademark infringement and unfair competition under the Lanham Act are legally sufficient, we turn to the factors to be considered in deciding a request for a permanent injunction.

To obtain its permanent injunction, Mnemania must demonstrate "(1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would

not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

   1. *Irreparable Harm and Unavailability of Remedies at Law*

We will consider the first two factors, whether Mnemania suffered an irreparable injury and whether legal remedies are inadequate to compensate for its injury, together. "Harm to reputation or goodwill can constitute irreparable injury because it is 'virtually impossible to quantify in terms of monetary damages.'" *GlaxoSmithKline LLC v. Boehringer Ingelheim Pharms., Inc.*, 484 F. Supp. 3d 207, 226 (E.D. Pa. 2020), *appeal dismissed sub nom. GlaxoSmithKline LLC v. Boehringer Ingelheim Pharm*, No. 20-2926, 2020 WL 8922861 (3d Cir. Nov. 25, 2020) (quotation omitted). The likelihood of confusion from the infringer's continued use of a mark may also provide a basis for irreparable injury. *See Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998).

We have already determined Mnemania demonstrated a likelihood of confusion from Forrest's concurrent use of the CREMSTAR mark. We also agree with Mnemania that its lack of control over its CREMSTAR mark may well result in damage to its reputation. *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) ("[Plaintiff's] mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use...."). The potential for damage to Mnemania's trademarks exists as Forrest is no longer bound by the parties' contract governing the delivery of cremation services to the Philadelphia area. *See S & R Corp.*, 968 F.2d at 378. We find that Mnemania has shown an irreparable injury stemming

from Mnemania's loss of control over its mark and the likelihood of confusion to consumers that cannot be compensated for in monetary terms. *See GlaxoSmithKline LLC*, 484 F. Supp. 3d at 226.

### 2. Balance of Hardships

We next weigh the hardships to the parties. As Forrest has not made any appearance in this case, we have no basis to infer it would suffer a hardship if an injunction were imposed. And, "the injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 728 (3d Cir.2004). Further, the damage done to Mnemania through the loss of control over its trademark outweighs any conceivable hardship to Forrest. *See Pappan Enterprises, Inc.*, 143 F.3d at 806. This factor also weighs in Mnemania's favor.

### 3. Public Interest

The final factor we consider in evaluating Mnemania's request for injunctive relief is whether the public interest would be disserved by a permanent injunction. *eBay Inc.*, 547 U.S. at 391. As our Court of Appeals has explained, "the most basic public interest at stake in all Lanham Act cases" is "the interest in prevention of confusion, particularly as it affects the public interest in truth and accuracy." *Kos Pharms., Inc.*, 369 F.3d at 730. Since we found a likelihood of consumer confusion from Forrest's continued use of the CREMSTAR mark, it follows that a prohibition on Forrest's use would eliminate that confusion. *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d at 198. Accordingly, we find this factor also weighs in Mnemonia's favor. Having found that all four factors weigh in Mnemonia's favor, we will enter a permanent injunction against Forrest.

### C. Attorneys' fees and costs

Mnemania seeks attorneys' fees and costs of $18,943.81. *See* ECF No. 12-3. We may award reasonable attorneys' fees under the Lanham Act, 15 U.S.C. 1117(a) in "exceptional" cases. "[G]enerally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 585 (E.D. Pa. 2002), *amended* (June 28, 2002) (citing *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280 (3d Cir.2000)). As we determined that Forrest's conduct was willful, awarding costs and fees to Mnemania is appropriate. Mnemania filed an attorney declaration and exhibits illustrating the fees and costs it has incurred. *See* ECF No. 12-3. Based on the statements in the declaration and our review of the bills provided, the fees are reasonable. Mnemania made efforts to avoid incurring fees or to reduce the time expended and billable rates when possible. *Id*. Accordingly, we will award fees and costs of $18,943.81 to Mnemania.

IV.     **CONCLUSION**

For the foregoing reasons, we will enter default judgment against Forrest, including a grant of attorneys' fees and costs, $1 in nominal damages, and injunctive relief. An appropriate order follows.

/s/ Chad F. Kenney
_____
CHAD F. KENNEY, JUDGE